[No. 66455-7-I.  Division One.  February 21, 2012.]

SUMMERHILL VILLAGE HOMEOWNERS ASSOCIATION, *Respondent*, v.
DAWN M. ROUGHLEY ET AL., *Defendants*, MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., ET AL., *Respondents*, GMAC
MORTGAGE, LLC, *on behalf of Deutsche Bank Trust
Companies Americas, as Trustee for RALI2007QSI,
Appellant.*

*William G. Fig* (of *Sussman Shank LLP*), for appellant.

*Patrick M. McDonald* (of *Pody & McDonald PLLC*), for respondent Summerhill Village Homeowners Association.

*Michael G. Fulbright*, for respondent Plumbline Management Corporation Profit Sharing Plan.

*Steven K. Linkon* and *Brian S. Sommer* on behalf of US Bank NA, amicus curiae.

¶1 ELLINGTON, J. — A condominium homeowners' association enjoys a statutory super priority lien for certain delinquent assessments. Where such a lien is foreclosed, Washington's redemption statute offers no safe haven to mortgage lenders who ignore the proceedings. Here, the trial court properly ruled the lender is not a proper redemptioner. We affirm.

## BACKGROUND

¶2 In November 2006, Dawn Roughley purchased a condominium in the Summerhill Village complex. She financed the purchase with a loan from Homecomings Financial LLC secured by a deed of trust in favor of Mortgage Electronic Registrations Systems (MERS).

¶3 Roughley became delinquent on her condominium association assessments. The Summerhill Village Condominium Association filed an action to foreclose its statutory lien, recorded a lis pendens, and served MERS. MERS forwarded the summons and complaint to Homecomings Financial's loan servicer, GMAC Mortgage LLC. GMAC did not respond.

¶4 Summerhill obtained a default judgment on September 24, 2009 and proceeded with a foreclosure sale. On December 18, 2009, Plumbline Management Corporation Profit Sharing Plan purchased Roughley's unit at a sheriff's sale for $10,302—the amount of the default judgment plus $100.

¶5 Shortly thereafter, MERS assigned its beneficial interest in the Roughley deed of trust to Deutsche Bank Trust Company Americas. Deutsche Bank appointed a successor trustee, LSI Title Agency Inc. Both instruments were returnable to Executive Services LLC after recording. Plumbline notified both LSI and Executive Services about the sheriff's sale and requested information about their intentions concerning the property. Plumbline received no response.

¶6 Meanwhile, Roughley was also delinquent on her loan payments. GMAC, as loan servicer and attorney-in-fact for Deutsche Bank, instituted foreclosure proceedings and thereby learned of Summerhill's foreclosure action in July 2010, apparently for the first time.

¶7 GMAC moved to intervene in Summerhill's foreclosure action, seeking either vacatur of Summerhill's year-old

default judgment and declaration of Deutsche Bank's lien priority or confirmation of its right to redeem. The court allowed GMAC to intervene but refused to vacate the judgment and ruled that GMAC was not a qualified redemptioner.

¶8 GMAC appeals.[1]

## DISCUSSION

■ ¶9 As a general rule, the priority of competing lien claims depends on the order in which those claims attached to the encumbered property, subject to recording requirements.[2] There are exceptions to this "first in time, first in right" rule. One of those is found in the Condominium Act, chapter 64.34 RCW:

(1) *The association has a lien on a unit for any unpaid assessments* levied against a unit from the time the assessment is due.

(2) *A lien under this section shall be prior to all other liens and encumbrances on a unit except*: (a) Liens and encumbrances recorded before the recording of the declaration; (b) *a mortgage on the unit recorded before the date on which the assessment sought to be enforced became delinquent*; and (c) liens for real property taxes and other governmental assessments or charges against the unit. A lien under this section is not subject to the provisions of chapter 6.13 RCW.

(3) Except as provided in subsections (4) and (5) of this section, *the lien shall also be prior to the mortgages described in subsection (2)(b) of this section to the extent of assessments for common expenses*, excluding any amounts for capital improvements, based on the periodic budget adopted by the association pursuant to RCW 64.34.360(1) which would have become due during the six months immediately preceding the date of a

---

[1] Because Summerhill's judgment was satisfied by the sale to Plumbline, Plumbline is the primary respondent in this case.

[2] *Homann v. Huber*, 38 Wn.2d 190, 198, 228 P.2d 466 (1951) (" 'in the absence of a statutory provision to the contrary and speaking generally, liens take precedence in order of time; the first in time being the first in right.' " (quoting *Hollenbeck v. City of Seattle*, 136 Wash. 508, 514, 240 P. 916 (1925))); *Seattle Mortg. Co. v. Unknown Heirs of Gray*, 133 Wn. App. 479, 495, 136 P.3d 776 (2006).

sheriff's sale in an action for judicial foreclosure by either the association or a mortgagee, the date of a trustee's sale in a nonjudicial foreclosure by a mortgagee, or the date of recording of the declaration of forfeiture in a proceeding by the vendor under a real estate contract.[3]

The term "mortgage" includes a deed of trust.[4] Thus, a condominium association's lien for common expense assessments has limited priority over deeds of trust recorded before the lien arises. This is often termed "super priority."[5]

¶10 The official comments to RCW 64.34.364 reveal the expectation of the legislature: "As a practical matter, mortgage lenders will most likely pay the assessments demanded by the association which are prior to its mortgage rather than having the association foreclose on the unit and eliminate the lender's mortgage lien."[6]

¶11 Therefore, under the statute,[7] Summerhill's 2008 assessment lien had priority over the 2006 deed of trust to the extent of Summerhill's assessments for common expenses. Deutsche Bank's predecessor, MERS, was included in and notified of the foreclosure action, but GMAC, as the loan servicer, did not facilitate payment of the assessment lien prior to the sheriff's sale. The sale extinguished the 2006 deed of trust. The question now is whether Deutsche Bank can redeem.

¶12 Washington's redemption statute permits a borrower or mortgage lender to redeem foreclosed property

---

[3] RCW 64.34.364 (emphasis added).

[4] RCW 64.34.020(27).

[5] *See generally Seattle Mortg.*, 133 Wn. App. at 495-96.

[6] 2 SENATE JOURNAL, 51st Leg., Reg. Sess., App. A at 2080 (Wash. 1990); *see also* 1 SENATE JOURNAL, 51st Leg., Reg. Sess., at 376 (Wash. 1990). It appears the Senate adopted the Washington State Bar Association comments, which are substantially identical to the official comments to the Uniform Condominium Act concerning this section.

[7] RCW 64.34.364(7) provides that recording of a condominium association declaration "constitutes record notice and perfection of the lien for assessments." In a motion for reconsideration, GMAC contends this provision means any mortgage loan made after the filing of the declaration is subsequent in time for purposes of RCW 6.23.010(1)(b). We reject this contention. The association's lien does not arise until the "assessment is due." RCW 64.34.364(1).

for the price paid at the sale.[8] "Redemption is the process of canceling and annulling a defeasible title, such as is created by a mortgage or a tax sale, by paying the debt or fulfilling other conditions."[9]

¶13 RCW 6.23.010 identifies qualified redemptioners:

(1) Real property sold subject to redemption, as provided in RCW 6.21.080, or any part thereof separately sold, *may be redeemed by the following persons*, or their successors in interest:

(a) The judgment debtor, in the whole or any part of the property separately sold.

(b) *A creditor having a lien by judgment, decree, deed of trust, or mortgage*, on any portion of the property, or any portion of any part thereof, separately sold, *subsequent in time to that on which the property was sold*. The persons mentioned in this subsection are termed redemptioners.[10]

To qualify as a redemptioner, the holder of a lien by deed of trust must have acquired that lien "subsequent in time" to the one being foreclosed.[11] This comports with Washington's first in time, first in right rule of lien priority, and allows junior lienholders an opportunity to salvage something if their liens have been extinguished by foreclosure.[12]

---

[8] RCW 6.23.010; *see also* 3 WASH. STATE BAR ASS'N, WASHINGTON REAL PROPERTY DESKBOOK § 46.15(4), at 46-53 to -54 (3d ed. 1996).

[9] *City of Tacoma v. Perkins*, 42 Wn.2d 80, 85, 253 P.2d 957 (1953).

[10] (Emphasis added.)

[11] 3 WASH. STATE BAR ASS'N, *supra*, § 46.15(2), at 46-51 ("if the lien of the judgment is prior to the one being foreclosed, the holder of the prior lien does not have a right of redemption because the prior lienholder's lien is not affected by the foreclosure").

[12] Once a junior lien is extinguished by foreclosure, the holder of that lien may redeem the property from the foreclosing prior lienholder. *DeYoung v. Cenex Ltd.*, 100 Wn. App. 885, 895, 1 P.3d 587 (2000); *see also* 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS §19.19, at 396 (2d ed. 2004); 12 DAVID A. THOMAS, THOMPSON ON REAL PROPERTY § 101.07(c)(3), at 506 (2d Thomas ed. 2008); *United States v. Stadium Apartments, Inc.*, 425 F.2d 358, 364 (9th Cir. 1970) (describing redemption statutes in general and interpreting United States Code and Idaho Code).

¶14 Deutsche Bank's 2006 deed of trust was not subsequent in time to Summerhill's 2008 super priority assessment lien, so GMAC/Deutsche Bank is not a proper redemptioner under the statute. GMAC contends, however, that a literal application of the statute in the context of a super priority lien violates legislative intent and creates absurd consequences.

¶15 Statutory interpretation is a question of law, reviewed de novo.[13] If the meaning of a provision is plain on the face of the statute, we follow that plain meaning.[14] If we cannot discern the plain meaning, we employ various rules for discerning the legislature's intent for the statute as a whole.[15] We construe a statute so as to effectuate that intent, avoiding a literal reading if it would result in unlikely, absurd, or strained consequences.[16]

¶16 GMAC contends the legislature actually intended to protect all junior lienholders, and that the reference to a lien subsequent in *time* merely means a lien subsequent in *priority*:

> In nearly all redemption scenarios, subsequent in time is understood to mean subsequent in priority or right, such that redemption is allowed. It is a logical syllogism that GMACM is a statutory redemptioner: If GMACM's lien is subsequent in right to the lien Summerhill foreclosed; and if, under the common law, a lien subsequent in time is a lien subsequent in right; then GMACM's lien must necessarily be a lien subsequent in time as contemplated by the redemption statute.
>
> The redemption statute's retention of the words "in time" after "subsequent" is a historical artifact of the common law "first in time is first in right" rule, which according to all

---

[13] *Millay v. Cam*, 135 Wn.2d 193, 198, 955 P.2d 791 (1998).

[14] *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).

[15] *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996).

[16] *Id.* (purpose of enactment should prevail over express but inept wording).

relevant authority is understood to refer to respective lien priority.[17]

¶17 GMAC also contends a literal reading leads to absurd consequences such as those here, where a stranger to the property is allowed a windfall, the mortgage debtor is left with a deficiency, and the secured lender is punished. GMAC urges this court to interpret the provision to grant redemption rights to a creditor having a lien *junior* to that on which the property was sold.

¶18 The problem with this argument is that the language of the statute is unambiguous, and the expressed legislative intent is consistent with the language. The legislature created the super priority lien and did not amend the redemption statute. There is no sign of legislative confusion as to the difference between a lien subsequent in time and a lien prior in time but junior in priority. And it is evident from the official comment that the consequences of that difference were intentional: "As a practical matter, mortgage lenders will most likely pay the assessments . . . *rather than having the association foreclose on the unit and eliminate the lender's mortgage lien*."[18]

¶19 Nor does a literal reading lead to unlikely, absurd, or strained consequences. GMAC had both notice and opportunity to protect its interests and failed to do so.

¶20 This is a highly technical statutory scheme, not for casual tinkering by courts. We will not rewrite the redemp-

---

[17] Br. of Appellant at 27.

[18] 2 SENATE JOURNAL, 51st Leg., Reg. Sess., App. A at 2080 (Wash. 1990) (emphasis added). We reject GMAC's argument that this is "precisely" what GMAC has tried to do by proceeding under the redemption statute. Br. of Appellant at 19. GMAC did not attempt to pay the assessments; it waited silently until after the super priority lien was foreclosed, and then tried to redeem.

tion statute because a lienholder's lack of diligence has had unexpected consequences.[19]

¶21  Affirmed.

DWYER, C.J., and BECKER, J., concur.

After modification, further reconsideration denied July 6, 2012.

---

[19] Plumbline asserts that if GMAC is deemed a proper redemptioner, it failed to adhere to the procedural requirements of the redemption statute. Because GMAC was not a proper redemptioner, we need not address this issue.