# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JOSE DIAZ , <br><br>               Appellant, <br><br>        v. <br><br> ERIC HSUEH, EASTSIDE FUNDING, LLC & PACIFIC CENTER CONDOMINIUM OWNERS ASSOCIATION; and all other persons or parties unknown claiming any right, title, estate, lien or interest in the real estate described in the complaint herein, <br><br>               Respondents. | No. 77771-8-I <br><br> DIVISION ONE <br><br> UNPUBLISHED OPINION <br><br> FILED: April 22, 2019 |

DWYER, J. — Jose Diaz appeals the dismissal of his lawsuit seeking to quiet title to property he purchased at a sheriff's sale after a condominium association foreclosed on a lien. However, the property Diaz purchased was subject to the mortgage holder's superior lien and his interest was eliminated when the mortgage holder foreclosed on that lien. Because no genuine issues of material facts exist as to whether the mortgage holder protected its senior lien position, the trial court properly granted summary judgment. The court also acted within its discretion in imposing sanctions under CR 11. We affirm.

I

On April 2, 2015, the Pacific Center Condominium Owners Association (the Association) commenced a foreclosure action against condominium owner John Post, seeking to foreclose on a lien for delinquent assessments. The

Association also named First Horizon Home Loan Corporation as a defendant because First Horizon held a beneficial interest in two deeds of trust on the property.

Approximately three months later, on June 22, 2015, the trial court entered an order dismissing First Horizon from the Association's lawsuit and confirming the superior lien position of its deeds of trust. The "Stipulated Order Dismissing Defendant First Horizon" provides, in relevant part:

3. The sum of $1,842.89 has been paid to Plaintiff by or on behalf of First Horizon. This amount equals six months of assessments as contemplated by RCW 64.34.364(3).

4. [The Association] agrees that said payment and conditions above satisfy [the Association's] lien priority with respect to the deeds of trust, and that the deeds of trust are fully superior to [the Association's] lien unless the unit is sold at a sheriff's sale and the unit is subsequently redeemed.

5. The terms and conditions stipulated to herein shall continue to bind and inure to the stipulating parties and to their successors and assigns.

The Association proceeded to judicially foreclose on its lien for the debt remaining after the payment of eight months' of assessments by First Horizon. In October 2015, the court entered an order of default and decree of foreclosure as to the two remaining defendants—the condominium owner and an unrelated junior lien holder. Approximately six months later, on January 11, 2016, a sheriff's sale took place. Jose Diaz placed the highest bid at $12,181.84 and obtained a sheriff's deed to real property. That deed conveyed to Diaz the "right, title and interest" in the property of the defendants. The court entered an order

2

confirming the sheriff's sale and disbursing the proceeds to satisfy the Association's lien. The Association filed a full satisfaction of the judgment.

Meanwhile, while the Association's lien foreclosure action was pending, First Horizon initiated proceedings to foreclose on a deed of trust recorded in 2007. On October 27, 2015, approximately three months before Diaz purchased the property at the sheriff's sale, Quality Loan Service Corp., acting on behalf of First Horizon, recorded a notice of a trustee's sale. The trustee's sale was scheduled for February 26, 2016.

The trustee's sale eventually took place on March 25, 2016, approximately two months after the sheriff's sale. Eric Hsueh was the successful purchaser with a bid of $217,000. A trustee's deed was recorded shortly thereafter, on April 7, 2016. Ten months after Hsueh purchased the property at the trustee's sale, Diaz recorded a sheriff's deed to real property on January 26, 2017.

In March 2017, Diaz filed the lawsuit at issue in this appeal against Hsueh, the purchaser at the trustee's sale, Eastside Funding, LLC, an entity that provided funding to Hsueh, and the Association. Diaz sought to quiet title to the property. Diaz's complaint alleged that a portion of the proceeds from the sheriff's sale was applied to assessments that accrued during the six-month period preceding the sheriff's sale and that "unpaid condominium assessments for the six months preceding the Sheriff's sale are afforded super-priority over any and all mortgage liens including the first and second mortgages on the subject property." Diaz contended that all preexisting liens were subordinate to the Association's lien and were extinguished by the judicial foreclosure.

3

Hsueh and Eastside Funding answered the complaint. Eastside Funding claimed to have no interest in the property because Hsueh repaid the bridge loan shortly after the sale and Eastside released its security interest. Both defendants asserted that First Horizon's deed of trust was superior to the Association's lien and was, therefore, unaffected by the foreclosure and sheriff's sale, and that Diaz's interest in the property was eliminated by the foreclosure of the deed of trust. The defendants also asserted that Diaz's lawsuit was frivolous in view of the court orders entered in the Association's lawsuit and recorded real estate documents.

The parties filed cross motions for summary judgment.[1] Following a hearing, the court granted the defendants' motion, denied Diaz's motion, and dismissed the complaint. The court also awarded $5,000 in attorney fees as a sanction against Diaz and his attorney.[2]

II

This court reviews summary judgment orders de novo. King v. Rice, 146 Wn. App. 662, 668, 191 P.3d 946 (2008). Summary judgment is appropriate only if, viewing the facts in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014). "By filing cross motions for summary judgment, the parties concede

---

[1] It does not appear that the Association filed an answer or moved for summary judgment, but the Association appeared in the case and filed a response in opposition to Diaz's motion for summary judgment.

[2] The defendants sought an award of more than $11,000 in fees.

4

there were no material issues of fact." Pleasant v. Regence BlueShield, 181 Wn. App. 252, 261, 325 P.3d 237 (2014).

The Condominium Act, chapter 64.34 RCW, creates a scheme of lien priority that departs from the generally applicable "first in time" rule. See Homann v. Huber, 38 Wn.2d 190, 198, 228 P.2d 466 (1951). The statute carves out an exception to the usual lien priority rule by giving a condominium association's lien for common assessments a limited priority over any preexisting recorded mortgage. RCW 64.34.364; Summerhill Vill. Homeowners Ass'n v. Roughley, 166 Wn. App. 625, 628-29, 270 P.3d 639, 289 P.3d 645 (2012). This exception, often referred to as a "super priority" lien, is limited to six months of common assessments based on the association's periodic budget. Summerhill, 166 Wn. App. at 629. A valid foreclosure of a senior lien or mortgage extinguishes the junior interests of holders named as defendants. U.S. Bank of Wash. v. Hursey, 116 Wn.2d 522, 526, 806 P.2d 245 (1991); Worden v. Smith, 178 Wn. App. 309, 319-20, 314 P.3d 1125 (2013). This being the case, the official comments to the Condominium Act recognized that, in most cases, mortgage lenders would pay the assessments required to satisfy the "super priority" lien, "'rather than having the association foreclose on the unit and eliminate the lender's mortgage lien.'" Summerhill, 166 Wn. App. at 632 (emphasis omitted) (quoting 2 SENATE JOURNAL, 51st Leg., Reg. Sess., App. A at 2080 (Wash. 1990)).

RCW 64.34.364 governs liens for assessments and provides, in relevant part:

5

(1) The association has a lien on a unit for any unpaid assessments levied against a unit from the time the assessment is due.

(2) A lien under this section shall be prior to all other liens and encumbrances on a unit except: (a) Liens and encumbrances recorded before the recording of the declaration; (b) a mortgage on the unit recorded before the date on which the assessment sought to be enforced became delinquent; and (c) liens for real property taxes and other governmental assessments or charges against the unit. A lien under this section is not subject to the provisions of chapter 6.13 RCW.

(3) Except as provided in subsections (4) and (5) of this section, *the lien shall also be prior to the mortgages described in subsection (2)(b) of this section to the extent of assessments for common expenses, . . . which would have become due during the six months immediately preceding the date of a sheriff's sale* in an action for judicial foreclosure by either the association or a mortgagee . . . .

(Emphasis added.)

Diaz contends that because First Horizon paid the super priority lien amount on or before June 22, 2015, and the sheriff's sale did not take place until January 2016, First Horizon's payment could not satisfy the requirements of RCW 64.34.364(3). He argues that according to statute, the amount of the six months' of assessments could not be calculated, much less paid, until the date the sheriff's sale was set because the statute requires the mortgage holder to pay the assessments that were due during the six months that immediately preceded the sheriff's sale. Diaz contends that the statute does not allow the mortgage holder to pay the priority lien amount in advance, as First Horizon did in this case.

Regardless of the merits of his interpretation of the statute, Diaz cannot avoid the legal effect of the court's orders entered in the Association's lawsuit.

6

Those orders established that (1) First Horizon paid six months' of assessments as contemplated by RCW 64.34.364, (2) the payment satisfied the Association's super priority lien and protected First Horizon's superior lien position, and (3) First Horizon was entitled to dismissal and was unaffected by the decree of foreclosure of the Association's lien. Diaz argues that the Association and First Horizon entered into an agreement that violated the terms of the statute. He argues extensively that the court is not bound by the parties' stipulations as to matters of law. But the trial court's orders in the condominium lawsuit have the same binding and preclusive effect, whether or not they are based upon stipulations. And this appeal is not an appropriate vehicle to challenge an order entered in the Association's lawsuit.

The property interest that Diaz purchased at the sheriff's sale was the interest of the defendants—the condominium owner and a junior lienholder. And court records established that those interests were encumbered by First Horizon's deeds of trust, and the deeds of trust were not extinguished by the foreclosure of the Associations' lien for unpaid assessments.

Neither Summerhill nor BAC Loan Servicing, LP v. Fulbright, 180 Wn.2d 754, 328 P.3d 895 (2014), advances Diaz's argument. In those cases, the mortgage holders did not appear in the condominium association's foreclosure lawsuit or take steps to protect their lien priority position. The issue was whether the mortgage holders had a statutory right of redemption.

7

III

Diaz contends that even assuming First Horizon's advance payment could satisfy the requirements of RCW 34.64.364(3), he was entitled to notice of the foreclosure of First Horizon's deed of trust. Diaz claims he was not notified of the foreclosure even though he owned the property "during the non-judicial foreclosure sale process." Diaz cites RCW 61.24.040, which provides, among other things, that a notice of a trustee's sale must be mailed to the grantor and others who are known to have an interest in the property. It is undisputed that Diaz had no interest in the property when the notice of the trustee's sale was issued.

In a similar vein, Diaz argues that the Association and First Horizon were required to record their stipulation because it was a "conveyance of real property" under RCW 65.08.070. Even if the stipulation had been recorded, he contends it would have had no legal effect because it omitted a legal description as required by RCW 65.04.030(1). Diaz provides no authority that supports the position that the parties' agreement with regard to the payment of assessments and satisfaction of the "super priority" portion of the Association's lien was a "conveyance" within the meaning of RCW 65.08.070.

IV

Diaz argues that the court's decision to impose sanctions is unsupported by the record and the law.

We review sanctions under an abuse of discretion standard. Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 338, 858 P.2d

1054 (1993). "A trial court abuses its discretion when its order is manifestly unreasonable or based on untenable grounds." Fisons Corp., 122 Wn.2d at 339. The rules providing for sanctions are "'designed to confer wide latitude and discretion upon the trial judge to determine what sanctions are proper in a given case.'" Finsons Corp., 122 Wn.2d at 339 (quoting Cooper v. Viking, 53 Wn. App. 739, 742-43, 770 P.2d 659 (1989)).

CR 11 is intended to "deter *baseless* filings and to curb abuses of the judicial system."[3] Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 219, 829 P.2d 1099 (1992). To warrant CR 11 sanctions, a court filing must "lack a factual or legal basis." Bryant, 119 Wn.2d at 220. In addition, a court cannot impose CR 11 sanctions "unless it also finds that the attorney who signed [the filing] failed to conduct a *reasonable inquiry* into the factual and legal basis of the claim." Bryant, 119 Wn.2d at 220. Courts should "avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the [filing] was submitted." Bryant, 119 Wn.2d at 220.

The primary basis for Diaz's lawsuit and motion for summary judgment is the claim that First Horizon's payment of delinquent assessments did not satisfy the Association's super priority lien under the statute and, therefore, First

---

[3] CR 11(a) provides, in relevant part:

> The signature of a party or of an attorney [on a filing] constitutes a certificate by the party or attorney that . . . to the best of the party's or attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is well grounded in fact; (2) it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law; . . . . If a pleading, motion, or legal memorandum is signed in violation of this rule, the court . . . may impose . . . an appropriate sanction . . . including a reasonable attorney fee.

Horizon's deed of trust was subordinate to the Association's lien. Both of these issues were fully resolved by valid and final orders entered in the Association's lawsuit. As such, the court concluded that his complaint and motion for summary judgment were not "well grounded in fact and were not warranted by law."

The court determined that it would not have imposed sanctions based solely on the filing of the complaint. However, the court also found that after neglecting to conduct a reasonable inquiry into prior court orders and documents prior to filing the lawsuit, counsel then failed to voluntarily dismiss the case after being informally counseled by defense counsel and provided with the controlling orders and documents. Instead, counsel "proceeded to seek summary judgment, racking up fees for defendant and wasting [the] court's time." The court's findings support the award and its decision to impose sanctions was based on tenable grounds.

Hsueh and Eastside Funding request attorney fees on appeal. The respondents devote a single sentence to the request, citing "the same reasons" and the "same authority" under which fees were awarded below. RAP 18.1 "requires more than a bald request for attorney fees on appeal." Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wn.2d 692, 710 n.4, 952 P.2d 590 (1998). We decline to award fees on appeal.

Affirmed.

We concur:

10