[No. 22885.   Department Two.   March 24, 1931.]

HOPE GRANT REHM, *as Guardian and Individually, Respondent*, v. JOHN J. REILLY, *as Guardian, et al., Appellants.*[1]

[1]Reported in 297 Pac. 147.

*Burkey & Burkey* and *H. E. Donohoe*, for appellants.

*W. H. Cameron* and *C. D. Cunningham*, for respondent.

TOLMAN, C. J.—This is an action to quiet title. Only a part of the property described in the complaint is involved in this appeal.

It is alleged that Melvina Cannon, an incompetent person, is the owner of a life estate in the property described, and that the respondent Hope Grant Rehm is the owner in fee simple of the remainder.

Defendant Fisher and wife answered by appropriate denials and by cross-complaint, alleging that they were the owners in fee simple of that portion of the property now in dispute, and demand judgment establishing their title and awarding them damages for interference with their use and possession.

The trial court, after a hearing on the merits, entered judgment for the plaintiff substantially in accordance with the prayer of her complaint, and defendants Fisher have duly appealed to this court.

It appears practically without dispute that, sometime prior to May, 1922, Mrs. Melvina Cannon became the owner in fee simple of lots 1 to 6, inclusive, of block 6, Seminary Hill Addition to the city of Centralia, and, about that time, she, with her daughter, the respondent Hope Grant Rehm, went to a notary public engaged in the real estate business in the city of Centralia, and there executed a deed conveying all of the property described to the respondent Rehm as grantee. This deed was left with the notary, with instructions to deliver it to the respondent Rehm after the death of Mrs. Cannon. The evidence is not wholly clear and satisfactory as to whether Mrs. Cannon then parted with all control over, or right to withdraw, the deed, but, in the light of what subsequently transpired, we shall

assume that the deed then passed beyond her control, and there was what the law considers a delivery.

Mrs. Cannon at all times lived in the residence situated upon these lots. The daughter, the respondent Rehm, lived near by, but upon other property. Sometime after the execution of the deed, the daughter and her husband moved an old barn, which was on the property, to the front of lots 5 and 6, and made it over into a shop, which the respondent's husband occupied as a repair shop, where he carried on the business of repairing bicycles, lawn mowers, and the like, under the name of "Fixit Shop." The respondent, or her husband, or both, paid to the mother, Mrs. Cannon, five dollars per month, and, perhaps, part of the time ten dollars per month, for the use of this shop, and had at all times up to the time of the trial continued so to occupy it. The moving and repairing of the barn were all done at the expense of the Rehms.

The deed from Mrs. Cannon to her daughter remained at all times in the possession of the notary to whom it was intrusted, up to the time of his death, and thereafter in the possession of his son, and was by the son produced at the time of the trial below. This deed, of course, was never recorded, but something purporting to be a copy was recorded on November 7, 1928, the instrument recorded being simply marked, "This is a copy of the original held in trust," without revealing anything as to the execution or delivery, or giving any information as to where the original, if there was one, could be found.

Mrs. Cannon, about the year 1928, found herself unable to pay taxes and special assessments levied against the property, considerable sums being delinquent and unpaid. She, at that time, had a roomer, an elderly gentleman by the name of Reilly, to whom apparently she appealed for assistance, and he advanced,

for the payment of these liens, as respondent seems to admit, something over one hundred dollars, and, as appellants claim, an amount slightly in excess of two hundred and seventy dollars. The receipts for these taxes and assessments were all issued in the name of Mrs. Cannon, and passed into the possession of Reilly, who delivered them to the appellants before his death, which occurred just prior to the trial below.

Apparently as security for these advances, Mrs. Cannon gave Reilly a warranty deed to all six lots in July, 1928, which deed was at once recorded. Shortly thereafter, Reilly reconveyed these lots to Mrs. Cannon, which deed was also recorded; and thereupon Mrs. Cannon, by warranty deed, conveyed lots 5 and 6 (the property here in dispute) to one Grace Swain, who held the title in trust for Reilly, and gave to Reilly a duly executed warranty deed with the name of the grantee left blank. The deed from Mrs. Cannon to Grace Swain was recorded five days before the recording of the purported copy of the 1922 deed from Mrs. Cannon to Mrs. Rehm.

It seems apparent that the deed to Grace Swain was not only absolute in form, but was intended to be an absolute conveyance in satisfaction of the advances made by Reilly to Mrs. Cannon.

In April, 1929, Reilly exchanged lots 5 and 6, here in dispute, for twenty acres of land in Kitsap county theretofore owned by appellants, and he then inserted appellant's name as grantee in the deed from Grace Swain, which he held as hereinbefore stated, and delivered that deed to the appellants, who recorded it on April 23, 1929.

After the execution of the deed from Mrs. Cannon to Grace Swain and its recording, the Rehms continued to pay rent to Mrs. Cannon for the use of the property up to January 1, 1929, and Mrs. Cannon, during that

time, with the full knowledge of Mrs. Rehm, paid the rentals so received over to Reilly, as the owner of the property.

The record indicates the appointment of a guardian for Mrs. Cannon, because of her age (she being in her eighty-second year at the time of the trial below) and her consequent failing mentality. We have read with care her testimony, and, so far as we can judge from the cold record, her memory was fairly good, and there is nothing to indicate that, at the time of her dealing with Reilly, which was sometime before the guardian was appointed, she was not fully competent to handle her affairs. Even had she not been, the conveyance would have ,been voidable only, and, as will appear hereinafter, a present attack based on her incompe-· tency and an overreaching by Reilly (nothing of which was pleaded) could not be sustained against Fisher. We therefore do not discuss in detail this feature of the case.

There are many other facts and side issues which we regard as not materially affecting the results, and perhaps some other minor facts, which have a bearing, and which may be mentioned in their proper place as we proceed.

In his memorandum opinion, the trial court seemed to be in some doubt as to whether Reilly was an innocent purchaser for value, and, in his findings, held that he·was not. The court also held that the appellants were put on notice by the recording of the so-called copy of the deed, and hence were not innocent purchasers in any event. As we understand the undisputed facts, we can agree with neither holding.

From the beginning, our statute law has been:

"Whenever any person, married or single, having in his or her name the legal title of record to any real estate, shall sell or dispose of the same to an actual

bona fide purchaser, a deed of such real estate from the person holding such legal record title to such actual bona fide purchaser shall be sufficient to convey to and vest in such purchaser the full legal and equitable title to such real estate free and clear of any and all claims of any and all persons whatsoever not appearing of record in the auditor's office of the county in which such real estate is situated." Rem. Comp. Stat., § 10577.

To strengthen the matter, the legislature in 1927 passed an act in which appears:

"A conveyance of real property, when acknowledged by the person executing the same (the acknowledgment being certified as required by law), may be recorded in the office of the recording officer of the county where the property is situated. Every such conveyance not so recorded is void as against any subsequent purchaser or mortgagee in good faith and for a valuable consideration from the same vendor, his heirs or devisees, of the same real property or any portion thereof whose conveyance is first duly recorded. An instrument is deemed recorded the minute it is filed for record." Rem. 1927 Sup., § 10596-2; Laws of 1927, p. 671, § 2.

When the title passed to Reilly or to Grace Swain as trustee for him, there was nothing of record casting any doubt on the grantor's title, and, as Reilly paid value, he is an innocent purchaser within the meaning of the statute, unless he had actual knowledge of the outstanding deed or notice sufficient to put him on inquiry. It is not contended that Reilly had actual knowledge, and the only notice contended for is that given by the occupancy of the "Fixit Shop" situated on these lots by the husband of respondent Rehm as his place of business; but it clearly appears that the Rehms at all times occupied the "Fixit Shop" as tenants of Mrs. Cannon and paid rent therefor to her, and that Reilly knew, before he dealt with the property,

that they were tenants and paid rent. Therefore, the possession of the Rehms upon which they rely to give notice of a claim of fee simple title was in fact the possession of a tenant, and could be notice only of the tenancy.

In other words, the Rehms were in possession of no part of the property as owners under the unrecorded deed, and therefore their possession as tenants could and did supply no notice of any right in them, other than a right to occupy as tenants, and such right was not inconsistent with the record title and the right of the record owner to convey fee simple title. *Red River Valley Land & Investment Co. v. Smith,* 7 N. D. 236, 74 N. W. 194; *Townsend v. Little,* 109 U. S. 504; *Sanguinetti v. Rossen,* 12 Cal. 623, 107 Pac. 560; *Sheldon v. Powell,* 31 Mont. 249, 78 Pac. 491; 39 Cyc. 1748; 27 R. C. L., § 485, p. 721.

While we are satisfied that Reilly was a purchaser in good faith and for a valuable consideration, and could therefore give good title to one who had notice *(Hawkes v. Hoffman,* 56 Wash. 120, 105 Pac. 156, 24 L. R. A. (N. S.) 1038), still we are equally satisfied that appellants Fisher were also innocent purchasers. The only thing placed of record after the conveyance to Swain for Reilly was the so-called copy of the unrecorded deed. The county auditor no doubt was quite right in accepting and recording anything which might be handed to him for that purpose. It is not for him to attempt to determine what is recordable and what is not. Our statutes specify what instruments shall be recorded, and when an instrument recordable under the statute is filed for record, it becomes notice as the statute provides; but the recording of anything not specified by the statute is, generally speaking, a mere nullity, and no one is required to take notice of it.

Certainly the statutes do not authorize the recording of a copy, and more certainly a copy which bears no evidence that there ever was an original in existence. We do not here attempt to say what would have been the effect of the recording of an affidavit stating the substance of the facts upon which the respondents now rely, but we do say that the paper which was filed failed to disclose the existence of a duly executed deed, anything tending to show the delivery of such a deed, or any fact which would put one upon inquiry and lead to the ascertainment of the truth.

It follows that the judgment must be reversed, and the cause is remanded with directions to enter a judgment quieting title to lots 5 and 6 in the appellants.

FULLERTON, BEALS, MILLARD, and BEELER, JJ., concur.