[No. 31189.   Department Two.   May 11, 1950.]

MINNIE I. DIIMMEL, *Respondent and Cross-appellant*, v.
D. H. MORSE *et al., Respondents*, KARL J. KAFFLEN,
*Appellant.*[1]

[1]Reported in 218 P. (2d) 334.

*E. A. Cornelius,* for appellant.

*Boardman Noland,* for respondent and cross-appellant.

*Wm. Lucht, Jr.,* and *T. G. Patterson,* for respondent F. I. Lenzi.

MALLERY, J.—This is an appeal from a judgment in which deeds from Mrs. Diimmel to one Felch were canceled as to him. Only two mortgages made by him are involved in this appeal.

Sometime prior to April 26, 1948, Mrs. Diimmel met Felch, alias Welch, as he will be designated hereafter, who represented himself to be a widower. He introduced his wife as his niece. Mrs. Diimmel was a widow, employed as a chambermaid, and was of less than average intelligence. Her acquaintance with Welch developed rapidly, and soon they were engaged to be married.

Mrs. Diimmel was the owner of two pieces of real estate, referred to as the Erie street and the Hogan street properties. Each parcel had a house thereon, which was divided into apartments and rented.

Welch claimed to be a property manager, and represented to Mrs. Diimmel that certain people were trying to commit her to an asylum, that her deeds were faulty, and that if she would put her property in his name he would straighten out her title and, also, profitably manage it for her. She trusted Welch implicitly.

On April 26, 1948, Mrs. Diimmel, accompanied by Welch, went to a notary public for the purpose of transferring her title to Welch, but this notary, for reasons unknown, refused to take her acknowledgment. They then went to the office of Welch's attorney, and he completed the transfer for them. Mrs. Diimmel did not have her glasses on and could not see well, but she testified that she knew the title to her property was being put in the name of Welch.

On May 20, 1948, Welch gave a note and mortgage to Mr. Lenzi in return for a loan of fifteen hundred dollars on the Erie street property. Welch and his wife were living on the property at the time. The transaction was handled

through Lenzi's attorney, and Lenzi did not visit the premises. The record is silent as to whether or not the attorney was ever on the property. Lenzi did see the title insurance policy, however. He did not know Mrs. Diimmel.

On about June 1, 1948, Welch was arrested on a fugitive warrant from the state of Wisconsin, where he was wanted for forgery. Bail was set at five thousand dollars. He called his attorney, disclosed that he had a wife, and requested him to get a bond for his release. The attorney contacted Mr. Kafflen, a bondsman, for that purpose, and they went out to look at Welch's property. Kafflen said that he would give a twenty-five-hundred-dollar bond with both properties as security. Welch's attorney had the bail reduced to that amount, and a note and mortgage were given, Welch's wife joining in the conveyance. Kafflen did investigate Welch's attorney, but beyond that he relied upon the attorney without question. In so far as the record indicates, Kafflen did not check the title records, saw no title insurance policy, and was unaware of the existing prior mortgage on the Erie street property held by Lenzi. Once out of confinement, Welch and his wife left for parts unknown, and have not been heard from since. No question is raised about Kafflen's liability on the bail bond being adequate consideration for his mortgage.

During his brief tenure as manager of the property, Welch incurred several debts, and it was the attachment of the property by a creditor to satisfy one of these that precipitated this action to cancel the deeds, and to declare the mortgages invalid.

The trial court held that the Lenzi mortgage was valid, and from this judgment the plaintiff, Mrs. Diimmel, cross-appeals. She contends that the deeds to Welch must be treated as forgeries, relying on the case of *Horvath v. National Mortgage Co.*, 238 Mich. 354, 213 N. W. 202, 56 A. L. R. 578, to support her contention. In that case, there was a fraudulent manipulation of papers, and the plaintiff did not realize that she was signing a deed, nor did she intend to. In the instant case, Mrs. Diimmel knew what she was sign-

ing, but did not fully realize the legal significance of her act. She did, however, understand that she was placing the title in Welch's name.

■ There is no question that fraud was perpetrated here, and that, as between Mrs. Diimmel and Welch, the deeds were entitled to cancellation. See *Murdoch v. Leonard,* 1 Wn. (2d) 37, 95 P. (2d) 37; *Kausky v. Kosten,* 27 Wn. (2d) 721, 179 P. (2d) 950.

■ However, a deed to which the grantor's signature was secured by fraud does not stand on the same footing as a forged deed, so far as concerns an innocent encumbrancer in good faith and for value. *Lewis v. Kujawa,* 158 Wash. 607, 291 Pac. 1105; 16 Am. Jur. 452.

Although Mrs. Diimmel is unquestionably of less than average intelligence, which fact was recognized by the appointment of a guardian *ad litem* by the court on its own motion, the facts remain that she was not under a general guardian; held title to property in her own name; transacted her own business; entered the transaction in question of her own accord, however ill-advised and influenced; and understood the general effect of a deed.

■ Under the circumstances, the recording acts must govern the outcome of the case. An encumbrancer, without notice of existing equities, may rely on the record chain of title, and, in the absence of notice, is not bound to go outside the records to inquire about them. *Burr v. Dyer,* 60 Wash. 603, 111 Pac. 866.

The trial court's judgment that Lenzi's mortgage is valid is affirmed.

The trial court found the facts to be that Welch's attorney acted as the agent of Kafflen, and so imputed notice to him of all of the attorney's knowledge of the facts surrounding Mrs. Diimmel's transfer of her title to Welch. Upon that factual basis the court decreed that Kafflen was not an innocent encumbrancer, and set aside his mortgage. From this judgment Kafflen appeals.

■ We are satisfied that the evidence in the record clearly preponderates against the finding that Welch's

attorney was also the agent of Kafflen. He represented Welch only. Kafflen may have been extraordinarily credulous, but notice of things he did not know will not be imputed to him on the basis of the knowledge of Welch's attorney. Kafflen was on the premises, but he was not required to inquire of the tenants concerning the title of the property. *Rehm v. Reilly,* 161 Wash. 418, 297 Pac. 147, 74 A. L. R. 350.

■ Kafflen did know that Welch was wanted for forgery in another state, but inquiry there would not have led to any knowledge touching the property in question in this state. It is the general rule that one who has notice of facts sufficient to put him on inquiry is deemed to have notice of all facts which reasonable inquiry would disclose, but the rule does not impute notice of every conceivable fact, however remote, that could be learned from inquiry; it imputes notice only of those facts that are naturally and reasonably connected with the fact known, and to which the known fact can be said to furnish a clue. *Hawkes v. Hoffman,* 56 Wash. 120, 105 Pac. 156, 24 L. R. A. (N. S.) 1038; *Rehm v. Reilly, supra;* 39 Am. Jur. 241.

The judgment against the appellant Kafflen is reversed. In all other respects the judgment is affirmed.

SIMPSON, C. J., ROBINSON, HILL, and HAMLEY JJ., concur.