IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JOSE DIAZ | ) | No. 80716-1-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| NORTH STAR TRUSTEE, LLC & U.S. | ) | |
| ROF II LEGAL TITLE TRUST 2015-1, BY | ) | |
| U.S. BANK NATIONAL ASSOCIATION, | ) | |
| AS LEGAL TITLE TRUSTEE; and all other | ) | |
| persons or parties unknown claiming any | ) | |
| right, title, estate, lien or interest in the real | ) | |
| estate described in the complaint herein. | ) | |
| | ) | |
| Respondents | ) | |
| | ) | |

ANDRUS, A.C.J. — Jose Diaz appeals the dismissal of his lawsuit seeking to quiet title to property he purchased at a sheriff's sale after a condominium association foreclosed on a lien for unpaid assessments. Diaz filed this complaint against U.S. ROF II Legal Title Trust 2015-1, by U.S. Bank National Association, as Legal Title Trustee (U.S. ROF), the successor beneficiary of a deed of trust on the property, and North Star Trustee, LLC (North Star), the successor trustee, after North Star sent Diaz a notice of a foreclosure sale. Diaz contended any interest the predecessor mortgage holder, Bank of America, had in the property was extinguished when the condominium association foreclosed its lien for unpaid

assessments. He claimed their attempt to foreclose on that extinguished lien violated the Washington Consumer Protection Act (CPA), chapter 19.86 RCW.

The trial court granted U.S. ROF and North Star's motion for summary judgment, concluding that the foreclosure did not extinguish the mortgage lender's lien because Bank of America paid six months of outstanding condominium fees to reserve its senior lien status under RCW 64.34.364(3). It also dismissed Diaz's CPA claims. We affirm.

<u>FACTS</u>

On May 18, 2007, Tatyana Jensen purchased a condominium at 11915 Roseberg Avenue South, in Seattle. Jensen borrowed $132,000 and signed a promissory note with the lender, Pierce Commercial Bank, for this transaction. The deed of trust Jensen executed listed Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary of the deed of trust, as nominee for Pierce Commercial Bank, and Ticor Title Company as the trustee. The deed of trust was assigned to Bank of America[1] in 2011, and assigned to U.S. ROF in 2017. MERS appointed North Star as successor trustee, also in 2017.

Jensen's condominium is a part of the Roseberg Condominium Association (the Association). In May 2012, the Association initiated a judicial foreclosure against Jensen to collect unpaid assessments. The Association also named Bank of America and MERS as defendants in that foreclosure suit.

---

[1] Bank of America was the successor in interest to BAC Home Loans Servicing, LP, f/k/a/ Countrywide Home Loans Servicing, LP. The record is unclear as to when Pierce Commercial Bank assigned its deed of trust to BAC Home Loans Servicing but it appears undisputed that this assignment occurred.

On September 4, 2012, the trial court entered a default order against Bank of America and MERS after they failed to appear. The court also entered a decree of foreclosure, declaring that any lien held by Bank of America and MERS was inferior and subordinate to the Association's lien and was foreclosed.

Approximately four months later, on January 11, 2013, the Association agreed to the entry of an order (January 11 Order) with Bank of America that provided in relevant part:

> 2. [Bank of America] has tendered to Plaintiff, and Plaintiff has accepted, the super priority lien amount of $1,164.00 (6 months X $194.00) as contemplated under RCW 64.34.364(3).
>
> 3. Plaintiff acknowledges that the sum tendered reestablishes the above-referenced Deed of Trust as a lien fully senior to the lien being foreclosed by Plaintiff.
>
> 4. With the super priority lien now fully satisfied, in the event that Plaintiff elects to foreclose, such a foreclosure would not foreclose, affect, or impair Lenders' Deed of Trust.
>
> 5. The terms and conditions stipulated to herein will continue to bind and inure both stipulating parties, including any successor in interest to either party.

The January 11 Order dismissed Bank of America and MERS from the foreclosure action with prejudice. It did not, however, vacate the prior order of default against Bank of America and MERS.

On January 29, 2013, the trial court entered a default judgment and decree of foreclosure against Jensen and authorized the Association to sell the property at a sheriff's sale (January 29 Judgment). It decreed that "the rights of all defendants, including mortgage lenders, be adjudged inferior and subordinate to the plaintiff's lien and be forever foreclosed" subject to any statutory right of redemption. The January 29 Judgment did not explicitly exclude Bank of America

from the "mortgage lenders" whose lien rights were subordinated to the Association's lien. However, the order specifically indicated it was based, in part, on the "January 11, 2013. . . Stipulation and Agreed Order of Dismissal of defendants Bank of America . . ." which had dismissed Bank of America with prejudice.

After obtaining the January 29 Judgment, the Association tried to locate Jensen to collect its judgment. When the Association was unable to do so, it opted to conduct a sheriff's sale. The court issued an order of sale in November 2015. On January 15, 2016, the sheriff conducted this sale and Diaz, the highest bidder, purchased the property for $17,571.26. On January 18, 2016, Diaz contacted Patricia Army, the Association's attorney, to ask if the lender had paid any "priority fees" before his purchase. Army informed Diaz that the bank had paid these fees in 2013. She sent Diaz a copy of the January 11 Order that reestablished Bank of America's priority lien position.

The court confirmed the sheriff's sale to Diaz on February 23, 2016. After the expiration of the redemption period, the sheriff issued a Sheriff's Deed to Real Property to Diaz on August 14, 2017.

Bank of America's assignee to the deed of trust, U.S. ROF, asked North Star to foreclose its lien for nonpayment of the mortgage under chapter 61.24 RCW. In August 2017, North Star mailed a "Notice of Default" and, a couple of months later, a "Notice of Foreclosure" to Jensen and to any occupant of the condominium. North Star recorded a "Notice of Trustee's Sale" with King County and set a sale date.

On March 5, 2018, Diaz filed a complaint against U.S. ROF and North Star seeking to quiet title and to enjoin the foreclosure. Diaz asserted U.S. ROF's deed of trust could not be enforced against the property and any attempt to foreclose violated the CPA. The trial court temporarily restrained the sale on April 20, 2018. North Star then postponed the trustee's sale.

In July 2018, Diaz filed for, and the trial court subsequently granted, partial summary judgment finding Diaz's title superior to U.S. ROF's interest. On May 15, 2019, the Association and U.S. ROF jointly moved to vacate the September 4, 2012 default order against Bank of America and MERS. The parties stipulated that their failure to vacate that order when they entered into the January 11 Order affirming the superiority of Bank of America's lien rights was excusable neglect under CR 60. The court granted the motion and vacated the September 4, 2012 default order nunc pro tunc as of January 11, 2013.

Based on this change of circumstances, in June 2019, U.S. ROF and North Star moved to vacate the partial summary judgment in favor of Diaz, arguing newly discovered evidence justified setting aside the summary judgment order. The trial court denied the motion, concluding that none of the evidence changed what Diaz knew or should have known when he purchased the condominium and that "Diaz could not have anticipated that more than three years after his purchase the September 4, 2012 default order against the Bank in the Roseberg case would be vacated." The court found that the January 11 Order reestablishing Bank of America's senior lien rights was "never filed with the King County Recorder's Office and Mr. Diaz was unaware of the order when he purchased the property." It

concluded that nothing in the January 29 Judgment provided sufficient notice or warning of Bank of America's outstanding lien, that Diaz had no affirmative duty to search the court record for the earlier court order or to contact the Association's attorney to inquire about other potential liens and, as a matter of law, Diaz was entitled to reasonably rely on the January 29 Judgment when he purchased the property. The court also denied their motion for reconsideration.

In July 2019, U.S. ROF and North Star filed a second motion for reconsideration after they discovered Diaz had lost an almost identical case, Diaz v. Hsueh, 8 Wn. App. 2d 1043, review denied, 194 Wn.2d 1003, 451 P.3d 326 (2019). The trial court granted this motion and vacated the partial summary judgment order because "the Court of Appeals rejected the identical arguments that plaintiff advanced in his motion for partial summary judgment." It wrote:

> First, the Court of Appeals held that a mortgage holder's stipulated order of dismissal from a condominium foreclosure action does not affect the mortgage holder's superior lien position. Second, the Court of Appeals held that the plaintiff was not entitled to additional notice of the mortgage holder's superior lien position, and rejected the argument that the stipulation was a conveyance of real property that needs to be recorded under RCW 65.08.070. . . .
>
> Based on Diaz v. Hsueh, the court concludes that it improperly granted plaintiff partial summary judgment. The mortgage holder in the case at hand was dismissed from the condominium association's foreclosure lawsuit pursuant to a stipulated order whereby the mortgage holder paid six-months of condominium association fees and thus reestablished its super priority lien. Under Diaz v. Hsueh, the mortgage holder had a super priority lien when the plaintiff purchased his condominium. Applying Diaz v. Hsueh, the court erroneously ruled that plaintiff's title is superior to defendants' interest in the condominium when it granted partial summary judgment on July 13, 2018.

- 6 -

The trial court further noted that North Star and U.S. ROF had been unaware of the unpublished decision when it moved to vacate the partial summary judgment motion and Diaz's attorney did not bring the case to the court's attention. It noted that Diaz involved "the same plaintiff, the same plaintiff's counsel, and is directly on point," and imposed CR 11 sanctions in the amount of $1,000 on Diaz's counsel for willfully failing to bring Diaz to the court's attention.

U.S. ROF and North Star then filed a motion for summary judgment. The trial court granted the motion and dismissed Diaz's claims with prejudice. The trial court denied U.S. ROF's request for further CR 11 sanctions and its request for an award of attorney fees.

Diaz appeals the dismissal of his claims. U.S. ROF and North Star cross-appeal the trial court's decision not to impose CR 11 sanctions and the denial of its request for attorney fees under RCW 4.84.185.

ANALYSIS

A. Lien Priority Status

Diaz first argues the trial court erred in concluding on summary judgment that Bank of America's lien survived the Association's foreclosure sale under RCW 64.34.364. We review the trial court's summary judgment orders de novo, performing the same inquiry as the trial court. Wilkinson v. Chiwawa Cmtys. Ass'n, 180 Wn.2d 241, 249, 327 P.3d 614 (2014). A court may grant summary judgment if the evidence, viewed in a light most favorable to the nonmoving party, establishes that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c).

Diaz advances two arguments. First, he contends that under RCW 64.34.364(3), a mortgage lender like Bank of America cannot maintain a senior lien interest in a condominium unless (1) assessments owed for the six months immediately preceding the foreclosure sale remain unpaid on the date of sale; and (2) the mortgage lender pays those assessments after they became due. Because Bank of America paid six months of assessments in 2013 and the sale did not occur until 2016, Diaz contends the bank failed to preserve its lien. Second, he argues that because no foreclosure sale was scheduled when the bank paid these assessments, the Association's lien did not yet have any priority over the bank's lien and the payment had no legal effect. We reject both arguments.

RCW 64.34.364 establishes an exception to the usual, first-in-time lien priority rule by giving a condominium association's lien for unpaid assessments a limited priority over any pre-existing recorded mortgage. Summerhill Vill. Homeowners Ass'n v. Roughley, 166 Wn. App. 625, 629, 270 P.3d 639 (2012). RCW 64.34.364 provides in relevant part:

> (1) The association has a lien on a unit for any unpaid assessments levied against a unit from the time the assessment is due.
>
> (2) A lien under this section shall be prior to all other liens and encumbrances on a unit except: . . . (b) a mortgage on the unit recorded before the date on which the assessment sought to be enforced became delinquent . . .
>
> (3) . . . [T]he lien shall also be prior to the mortgages described in subsection (2)(b) of this section to the extent of assessments . . . which would have become due during the six months immediately preceding the date of the sheriff's sale in an action for judicial foreclosure by either the association or a mortgagee . . .

- 8 -

. . . .

(5) If the association forecloses its lien under this section nonjudicially pursuant to chapter 61.24 RCW … the association shall not be entitled to the lien priority provided for under subsection (3) of this section.

(Emphasis added).

Diaz contends that under paragraph (3), a mortgage holder can retain the priority of its lien only by paying the Association six months of assessments <u>after</u> these assessments <u>became</u> due and immediately before the sheriff's sale. To support this position, Diaz relies on the phrase "immediately preceding the date of sheriff's sale," which he argues dictates when the mortgage holder's payment must be made.

We review questions of statutory interpretation de novo and interpret statutes to give effect to the legislature's intentions. <u>City of Spokane v. County of Spokane</u>, 158 Wn.2d 661, 672–73, 146 P.3d 893 (2006). We begin by examining the plain language of the statute. <u>In re Forfeiture of One 1970 Chevrolet Chevelle</u>, 166 Wn.2d 834, 838-39, 215 P.3d 166 (2009). "'The plain meaning of a statute may be discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'" <u>Chadwick Farms Owners Ass'n v. FHC LLC</u>, 166 Wn.2d 178, 186, 207 P.3d 1251 (2009) (internal quotation marks omitted) (quoting <u>State v. J.P.</u>, 149 Wn.2d 444, 450, 69 P.3d 318 (2003)).

First, the phrase "immediately preceding the date of the sheriff's sale" describes which six-month period is covered by the super priority lien. It does not mandate when the sum must be paid by a mortgage lender to retain its senior lien

status.  There is nothing in RCW 64.34.364(3) requiring the lender to wait until the passage of this six-month period before it may pay such assessments.  We will not "read into a statute matters that are not in it."  Kilian v. Atkinson, 147 Wn.2d 16, 21, 50 P.3d 638 (2002).

Second, Diaz's interpretation ignores the verb tense used in the same sentence—a construction which clearly contemplates payment of assessments in advance of their due date.  We employ traditional rules of grammar in discerning the plain language of the statute. Chevelle, 166 Wn.2d at 839.  "A legislative body's use of a verb tense holds significance in construing statutes." Crown West Realty, LLC v. Pollution Control Hearings Bd., 7 Wn. App. 2d 710, 738, 435 P.3d 288, review denied, 193 Wn.2d 1030, 447 P.3d 165 (2019) (citing United States v. Wilson, 503 U.S. 329, 333, 112 S. Ct. 1351, 117 L. Ed. 2d 593 (1992)).  The phrase "would have become due" is the conditional or subjunctive mood of the future tense verb phrase "will become due."[2]  THE CHICAGO MANUAL OF STYLE § 5.123, § 5.131 (17th ed. 2017).  The use of this verb tense and mood indicates the legislature's expectation that if a condominium owner will owe monthly assessments and fails to pay them, the association may conduct a sheriff's sale to foreclose its lien and a mortgage holder may retain its superior lien status by prepaying six months of assessments that otherwise would have become due and would have been owed to the association by the owner.

---

[2] "[T]he future tense is formed by using will with a verb's stem form {will walk} {will drink}.  It refers to an expected act, state, or condition {the artist will design a wall mural} {the restaurant will open soon}." THE CHICAGO MANUAL OF STYLE § 5.131 (Future tense).  The subjunctive mode "express[es] an action or state not as a reality but as a mental conception.  Typically, the subjunctive expresses an action or a state as doubtful, imagined, desired, conditional, hypothetical, or otherwise contrary to fact." Id. at § 5.123.

If the legislature had intended the mortgage holder to wait for the occurrence of the otherwise hypothetical condition, it would have chosen a different verb tense and mood in drafting the statute. Diaz's interpretation would require this court to change the current statutory language to the non-conditional past tense: "[T]he lien shall also be prior to the mortgages described in subsection (2)(b) of this section to the extent of assessments . . . which <u>became</u> due during the six months immediately preceding the date of the sheriff's sale." RCW 64.34.364(3) (emphasis added). This is not the language the legislature chose.

Next, Diaz argues that Bank of America's payment three years before the sheriff's sale could not extinguish the Association's super priority lien because the Association's lien had not yet taken "priority" over the bank's lien. He contends the Association's lien only gains priority if there is an actual judicial foreclosure. We reject this argument as well.

In <u>BAC Home Loans Servicing, LP v. Fulbright</u>, 180 Wn.2d 754, 328 P.3d 895 (2014), our Supreme Court held that, under RCW 64.34.364, a condominium association "establishes its priority to collect unpaid condominium assessments at the time the condominium declaration is recorded, even though it is not enforceable until the unit owner defaults on his or her assessments." <u>Id.</u> at 767. The court explained that at the moment the condominium association filed its foreclosure lawsuit the liens became reprioritized. <u>Id.</u> at 765. The Association initiated the foreclosure action before Bank of America paid the six months of assessments in January 2013. Under <u>BAC Home Loans</u>, the Association's super

- 11 -

priority lien existed by the time Bank of America paid the six months of assessments.

Because Bank of America's lien remained senior to that of the Association, the Association's foreclosure sale could not extinguish it. It is a "fundamental principal of mortgage law" that title of a purchaser at a foreclosure sale will be subject to all mortgages and other interests that are senior to the mortgage being foreclosed. Worden v. Smith, 178 Wn. App. 309, 319-20, 314 P.3d 1125 (2013) (citing RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 7.1 cmt. a (AM. LAW INST. 1997)). Because Bank of America preserved the seniority of its lien by prepaying six months of condominium assessments in January 2013, the Association's 2016 sale to Diaz did not, as a matter of law, extinguish that lien.

B. Bona Fide Purchaser

Diaz next contends that, regardless whether Bank of America's lien survived the foreclosure, he was a bona fide purchaser at the sheriff's sale because he bought the condominium for value without notice of the mortgage holder's interest in the property. Because the undisputed record demonstrates Diaz had constructive notice of the senior lien, we reject this argument.

"[T]he bona fide purchaser doctrine provides that a good faith purchaser for value who is without actual or constructive notice of another's interest in purchased real property has superior interest in that property." S. Tacoma Way, LLC v. State, 169 Wn.2d 118, 127, 233 P.3d 871 (2010). The determination of a buyer's status as a bona fide purchaser is a mixed question of law and fact. Albice v. Premier Mortg. Servs. of Wash., Inc., 174 Wn.2d 560, 573, 276 P.3d 1277

(2012). What a purchaser actually knew is a factual question but the legal significance of that knowledge is a legal question. Peoples Nat'l Bank of Wash. v. Birney's Enters., Inc., 54 Wn. App. 668, 674, 775 P.2d 466 (1989). This court reviews mixed questions of law and fact de novo. Clayton v. Wilson, 168 Wn.2d 57, 62, 227 P.3d 278 (2010).

In considering whether a person is a bona fide purchaser, we ask (1) whether the surrounding events created a duty of inquiry, and if so, (2) whether the purchaser satisfied that duty. Albice, 174 Wn.2d at 573. In answering the second question, the court considers the purchaser's knowledge and experience with real estate. Id.

Diaz contends he had no duty to investigate the status of Bank of America's lien because the January 11 Order reestablishing the seniority of its lien was unrecorded. But the test issue is not whether the document was recorded with the county auditor. A buyer receives constructive notice of another party's claim of right when the facts and circumstances surrounding the sale "would cause an ordinarily prudent person to inquire further." Albice, 174 Wn.2d at 573. The inquiry rule imputes to a purchaser "notice of all facts which reasonable inquiry would disclose." Olson v. Trippel, 77 Wn. App. 545, 551, 893 P.2d 634 (1995) (quoting Diimmel v. Morse, 36 Wn.2d 344, 348, 218 P.2d 334 (1950)).

The circumstances surrounding the sheriff's sale of the condominium put Diaz on notice of a possible senior mortgage lien. Diaz testified he was aware the sheriff's sale arose out of a judicial foreclosure for unpaid condominium dues. A search of King County property records would have revealed the Association's

judgment against Jensen for these unpaid assessments but not the judgment amount. The only way a prospective purchaser would know how much to bid at a sheriff's sale would be to determine the amount of money the judgment creditor was seeking to collect at the sale. And the only way to obtain this information would be to review a copy of the January 29 Judgment against Jensen. This judgment, had Diaz reviewed it, showed the principal amount owing of $6,841.26, with interest, attorney fees and costs of another $4,474.38, for a total judgment of $11,315.64.

A reasonable prospective purchaser would also need to know the value of the property. The tax-assessed value of the condominium in 2016 was between $82,000 and $95,000.[3] At the time an ordinarily prudent buyer would have been investigating whether to bid at the sheriff's sale, he would have understood the lien being foreclosed was well below the property's tax-assessed value. Indeed, Diaz bid only $17,571.26 to purchase this property. His purchase price was therefore between 18.5 percent and 21.43 percent of the property's tax-assessed value.

Diaz contends that any purchase price over 20 percent of a property's tax-assessed value is, as a matter of law, a purchase "for value" making him a bona fide purchaser as a matter of law. This argument, however, conflates the issue of whether Diaz was on constructive notice of Bank of America's lien and whether he purchased the property "for value." These issues are legally distinct. The undisputed facts demonstrate the judgment at issue was well below the tax

---

[3] King County tax records indicate the condominium was valued in 2015 at $82,000 for the 2016 tax year and valued in 2016 at $95,000 for the 2017 tax year.

assessed value of this property which would have put any ordinary purchaser on inquiry notice that a lender may have an interest in the property.

A property records search would have also revealed the existence of a Bank of America deed of trust on this property. A reasonable prospective purchaser would have investigated the status of this deed of trust, before bidding, to determine if it would survive the Association's foreclosure sale.

Diaz maintains he was entitled to rely on the January 29 Judgment which decreed that all mortgage lender liens were foreclosed. And he argues he had no duty to "comb through" the pleadings of the Association's foreclosure lawsuit to find the January 11 Order reestablishing Bank of America's lien rights. Neither argument is persuasive.

First, the January 29 Judgment decreed that "the rights of all defendants, including mortgage lenders, be adjudged inferior and subordinate to the plaintiff's lien." But it also clearly stated that Bank of America had been dismissed as a defendant on January 11, 2013. Thus, as of the date of the January 29 Judgment, Bank of America was no longer a defendant in that lawsuit and any decree foreclosing liens of "defendants" could not, as a matter of law, have extinguished the rights of a mortgage lender who was no longer a defendant in the foreclosure action.

While the January 29 Judgment did not explicitly indicate the Association had agreed to revive Bank of America's senior lien rights, it clearly identified the January 11 Order and identified Bank of America as the dismissed mortgage lender. A reasonably prudent prospective purchaser could have verified the status

of Bank of America's mortgage interest either by contacting the Association to determine its status or by reviewing a copy of the January 11 Order. The information in the July 29 Judgment was sufficient to trigger a duty to make further inquiry into the possible existence of a mortgage.

Second, Diaz has identified no case in which a Washington appellate court has ruled that a purchaser, as a matter of law, never has a duty to examine court filings. There may be facts and circumstances surrounding a sale that would cause an ordinarily prudent person to do so or at least to reach out to the judgment creditor's counsel to ask about court filings. Here, Diaz concedes he did not ask the Association whether the mortgage lender had paid condominium assessments until after he purchased the property. Had Diaz contacted the Association's attorney to inquire into the status of any mortgage before he purchased, as he did after the fact, he would have discovered that Bank of America had paid six months of assessments and had reestablished its senior lien rights. When Diaz contacted counsel after he purchased, this attorney immediately provided him a copy of the January 11 Order. He would not have had to comb through court filings—a simple email would have uncovered this information.

The record further reveals Diaz was not an inexperienced purchaser involving condominium association foreclosures. According to Diaz, he had purchased an interest in a different condominium in January 2016 at a sheriff's sale. 2019 WL 1781098 *1. Diaz testified he purchased this condominium a week before he purchased Jensen's property and the unpublished decision indicates he paid $12,181.84 for it. Diaz, 2019 WL 1781098 *1. Diaz did not purchase either

condominium as a personal residence. He testified in this case that he rented the Jensen condominium for $1,350 a month starting April 1, 2016. We can only conclude from these undisputed facts that Diaz is a real estate investor and was not an unsophisticated first time home buyer.

Diaz next maintains that he was not required to inspect the January 11 Order because that order was an unrecorded "conveyance" of real estate in violation of RCW 65.08.070.[4] We disagree.

Under RCW 65.08.060(3), a "conveyance" includes all written instruments by which any "interest in real property is created, transferred, mortgaged or assigned or by which the title to any real property may be affected, including . . . an instrument releasing in whole or in part, postponing or subordinating a mortgage or other lien . . . " (emphasis added). Diaz contends that the stipulation indicating Bank of America had paid six months of assessments and thereby retained its senior status as lienholder needed to be recorded because the Association used this payment to subordinate its lien to Bank of America's lien. But this argument misunderstands the operation of the condominium lien statute.

Under RCW 64.34.364(2) and (3), the Association has a single lien against a condominium for unpaid assessments, six months of which is prior to any mortgage, and the remaining portion of which has no priority over any mortgage recorded before the date on which the assessments became delinquent. By

---

[4] RCW 65.08.070 (1) indicates that "[a] conveyance of real property, when acknowledged by the person executing the same (the acknowledgment being certified as required by law), may be recorded in the office of the recording officer of the county where the property is situated. Every such conveyance not so recorded is void as against any subsequent purchaser or mortgagee in good faith and for a valuable consideration from the same vendor, his or her heirs or devisees, of the same real property or any portion thereof whose conveyance is first duly recorded. An instrument is deemed recorded the minute it is filed for record."

- 17 -

paying the six month "super priority" portion of this lien, Bank of America was not seeking a "release" of the Association's lien or seeking to have the Association subordinate its lien to that of the bank. By prepaying assessments the owner would otherwise be responsible for, Bank of America merely reduced the total monetary value of the Association's lien and retained its priority status. Thus, the payment was not a "conveyance" within the meaning of RCW 65.08.060(3) and it was not required to be recorded.

Based on this record, Diaz failed to establish he was a bona fide purchaser for value. The undisputed evidence shows he had constructive notice of the existence of a mortgage holder with superior lien rights. Diaz therefore purchased the Jensen condominium subject to U.S. ROF's mortgage.

C. Consumer Protection Act

Diaz contends North Star violated the CPA by initiating a foreclosure without having a legal entitlement to do so in violation of the Deed of Trust Act (DOTA). He also argues North Star violated the CPA by failing to register as a collection agency under the Washington Collection Agency Act (WCAA).

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. To succeed on a CPA claim, a plaintiff must establish (1) an unfair or deceptive act (2) in trade or commerce (3) that affects the public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act complained of and the injury suffered. Trujillo v. Nw. Tr. Servs., Inc., 183 Wn.2d 820, 834-35, 355 P.3d 1100 (2015). The first two elements may be

established by a showing that the alleged act constitutes a per se unfair trade practice. <u>Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.</u>, 105 Wn.2d 778, 785-86, 719 P.2d 531 (1986).

Because the deed of trust was valid and U.S. ROF had a legal right to commence a nonjudicial foreclosure, Diaz's first CPA claim fails. And we reject his second contention that North Star is required by law to register as a collection agency because North Star's trustee services in nonjudicial foreclosure proceedings are exempt from the registration requirement.

In order to pursue collection work in Washington, a collection agency must be properly licensed in this state. RCW 19.16.110; RCW 19.16.250(1). Violations of the WCAA constitute per se violations of the CPA. RCW 19.16.440. RCW 19.16.100(4)(a) defines "collection agency" as "[a]ny person directly or indirectly engaged in soliciting claims for collection, or collecting or attempting to collect claims owed or due or asserted to be owed or due another person." Diaz argues that North Star was operating as an unlicensed debt collection agency.

RCW 19.16.100(5)(c) specifically excludes from the definition of "collection agency"

> "[a]ny person whose collection activities are carried on in . . . its true name and are confined and are directly related to the operation of a business other than that of a collection agency, such as but not limited to: Trust companies; . . . lawyers; . . . credit unions; loan or finance companies; mortgage banks; and banks . . . ."

North Star contends that this exclusion applies to trustees whose sole business is conducting nonjudicial foreclosure sales under the DOTA. We agree.

The legislature explicitly excluded entities engaged in collection activities, such as "trust companies," from the registration requirements. The phrase "trust

company" is not defined in the WCAA but a "trust" is the well-established right of a trustee to hold a property interest at the request of another for the benefit of a third party, or beneficiary. BLACK'S LAW DICTIONARY 1817 (11th ed. 2019). The only reasonable interpretation of the phrase "trust company" is a business entity engaged in providing the services of a trustee.

Under the DOTA, a "trustee" is the person designated in the deed of trust or appointed under RCW 61.24.010(2) to hold the real property in trust to secure the performance of an obligation of the grantor, such as the payment of a mortgage. RCW 61.24.005(16); RCW 61.24.020. This trustee may be "[a]ny domestic corporation or domestic limited liability corporation incorporated [under Washington law] of which at least one officer is a Washington resident." RCW 61.24.010(1)(a). Trustees are statutorily authorized to conduct nonjudicial trustee foreclosure sales. RCW 61.24.020; RCW 61.24.030. Nothing in the DOTA requires trustees to register as collection agencies under the WCAA.

According to Lisa Hackney, the vice president of North Star's Trustee Operations, North Star is not licensed as a collection agency but it operates in its own name and its sole business in Washington is enforcing security interests and conducting nonjudicial foreclosure sales as a trustee under Washington's DOTA. Its customers are loan servicers, investors, mortgage lenders, credit unions and other lending institutions. These business operations fall within the exemption of RCW 19.16.100(5).

Diaz argues North Star admitted it was a "collection agency" when it referred to itself as a debt collector in foreclosure documents. The "Notice of Default" that

- 20 -

North Star sent on August 9, 2017, contained the following warning in capital letters:

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Included with the Notice of Default was a "Validation of Debt," that identified the amount of the debt and the amount of money needed to reinstate the loan. This document included the statement: "The communication to which this Validation is attached is an attempt to collect a debt and any information obtained will be used for that purpose."

The fact that North Star's foreclosure activities constitute the collection of a debt does not negate its statutory exclusion under RCW 19.16.100(5)(c). The exclusion extends to anyone engaged in "collection activities" as long as its operations are done in its true name and are confined and directly related to the operation of a trust company. As the Supreme Court noted in Obduskey v. McCarthy & Holthus LLP, __ U.S. __, 139 S. Ct. 1029, 1036, 203 L. Ed. 2d 390 (2019), "foreclosure is a means of collecting a debt." It is immaterial that North Star notified Diaz it was attempting to collect a debt. What is important is that North Star conducts no debt collection activities other than acting as a trustee in nonjudicial foreclosure proceedings under written deeds of trust. These activities render it exempt from registration under the WCAA.

North Star is not legally required to register as a collection agency under the WCAA and therefore did not violate the WCAA by failing to register as a collection agency. The trial court did not err in dismissing Diaz's CPA claim.

D. DCR 11 Sanctions and Attorney Fees under RCW 4.84.185

North Star and U.S. ROF contend the trial court erred in denying its request for CR 11 sanctions and attorney fees under RCW 4.84.185. We disagree.

CR 11 provides that all pleadings filed with a court constitute a certification by a party or its attorney that the pleading is well grounded in fact and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law or the establishment of new law. A trial court should impose sanctions only when it is patently clear that a claim has absolutely no chance of success. Loc Thien Truong v. Allstate Prop. & Cas. Ins. Co., 151 Wn. App. 195, 208, 211 P.3d 430 (2009).

In addition to CR 11, RCW 4.84.185 allows a trial court to impose attorney fees and costs against a non-prevailing party in any civil action the court finds to be "frivolous and advanced without reasonable cause." A lawsuit is frivolous under RCW 4.84.185 "if, when considering the action in its entirety, it cannot be supported by any rational argument based in fact or law." Dave Johnson Ins. v. Wright, 167 Wn. App. 758, 785, 275 P.3d 339 (2012).

We review a trial court's ruling on a motion for CR 11 sanctions and for attorney fees under RCW 4.84.185 for abuse of discretion. Kearney v. Kearney, 95 Wn. App. 405, 416, 974 P.2d 872 (1999); MacDonald v. Korum Ford, 80 Wn. App. 877, 884, 912 P.2d 1052 (1996).

The trial court did not abuse its discretion in denying CR 11 sanctions and refusing to award attorney fees to North Star and U.S. ROF under RCW 4.84.185. First, Diaz raised legal arguments of first impression, including the proper

interpretation of RCW 64.34.364(3) and RCW 19.16.100(5)(c). He also raised non-frivolous questions relating to his status as a bona fide purchaser. Second, although Diaz did not prevail in making similar arguments in the Diaz appeal, this court did not issue its decision in that case until 2019, long after Diaz initiated his 2016 lawsuit against North Star and U.S. ROF. Given the lack of clear published case authority, it cannot be said that Diaz's arguments, and those of his counsel, were not good faith requests for the extension of existing law. Because the litigation was not frivolous, the court did not abuse its discretion in denying the request for CR 11 sanctions for attorney fees under RCW 4.84.185.

We similarly decline to award attorney fees to North Star or U.S. ROF on appeal under RAP 18.1.

We affirm.

Andrus, A.C.J.

WE CONCUR:

Mann, C.J.